## Falls Township Local Option Petition

*Paul M. Barrett, Lawrence A. Monroe* and *I. Louis Rubin,* for petitioners.

*Edwin H. Satterthwaite,* for applicants for referenda.

*Isaac J. Vanartsdalen,* county solicitor, for Bucks County.

KELLER, P. J., June 12, 1951.—This matter is before us upon two petitions filed on May 29, 1951, by John P. Hansen, a resident and qualified elector of Falls Township, Bucks County, Pa., one of them being to set aside 13 petitions requesting a referendum on the granting of liquor licenses in Falls Township, Bucks County, and the other to set aside 13 petitions requesting a referendum on the granting of malt and brewed beverage retail dispenser licenses for consumption on the premises in Falls Township, Bucks County, at the primary election to be held on Tuesday, July 24, 1951. The objections to the referenda petitions, assigned as reasons to set the same aside, are identical in each proceeding. Therefore, they will be considered together and disposed of in one opinion.

These objections are as follows:

"3. That the said thirteen petitions, do not, taken together, constitute one petition, not having been bound together at the time of filing, as required by the Act of Assembly in such case made and provided.

"4. That no one of the said thirteen petitions was signed by registered electors equal to at least twenty-five per centum of the highest vote cast for any office in the Township of Falls at the last preceding general election.

"5. That none of the said petitions were filed with the said County Commissioners within the time required by law, having been filed on May 24, 1951.

"6. That signatures to said petitions were obtained by certain of the persons circulating the same falsely representing to the signers thereof that the purpose of the referenda was merely to prevent the issuance of additional liquor and beer licenses in various parts of Falls Township, and not disclosing that its purpose is to prevent the issuance of any liquor licenses, including the refusal of the Pennsylvania Liquor Board to renew existing licenses.

"7. That the said thirteen petitions do not, taken together, constitute one petition, not having been numbered consecutively, and the pages or sheets thereof not having been numbered consecutively, as required by law.

"8. The sheets of each petition are not numbered consecutively, as required by law.

"9. Each sheet of each petition does not have appended thereto the affidavit required by law.

"10. That all of the signers of said petitions did not sign with full knowledge of the contents of said petitions, for the reason set forth in paragraph no. 6 of this petition.

"11. That the affidavits appended to the said petitions do not set forth therein that the respective affiants are qualified electors of Falls Township.

"12. That the affidavits appended to the said petitions do not set forth the residence, as to municipality, street and number, of the respective affiants, as required by law.

"13. The said petitions fail to set forth therein that the signers of said petitions are registered electors, as required by law.

"14. The affidavits appended to said petitions fail to set forth that according to the affiants knowledge and belief the signers are duly registered, as are required by the Act of Assembly in such case made and provided.

"15. The said petitions show upon their faces that certain of the signers are not residents of Falls Township.

"16. If the said petitions were circulated in Morrisville Borough or some municipality other than Falls Township, then the appended affidavits to the effect that the affiant resides 'in the political subdivision in which the foregoing petition was circulated' is not a sufficient compliance with the Act of Assembly.

"17. The said petitions, and the affidavits appended thereto, fail to state therein that the signers are enrolled members of a political party, as required by law.

"18. That your petitioner is informed, believes, and therefore avers, that one of the thirteen petitions to which Emily E. Sauer made the affidavit was not circulated by her.

"19. Each sheet of the said petitions does not show the purpose of either the petition or the referendum.

"20. That the said petitions fail to state that the electors signing the same equal at least twenty-five per cent of the highest vote cast for any office in the township of the last preceding general election."

On the same day the objections were filed, to wit: May 29, 1951, the court entered an order directing that a hearing be had on the petitions on June 4, 1951, and, further, that notice of this hearing be given to the County Commissioners of Bucks County and to the persons therein designated, consisting of the affiants to the respective petitions, by serving a copy of the notice

on each of them in the manner prescribed in Rule 1009 (*b*) of the Pennsylvania Rules of Civil Procedure.

On June 4, 1951, the day fixed for the hearing, which was attended by a large number of the signers to the respective petitions, as well as the circulators, affiants and the clerk of the county commissioners, who will be hereinafter referred to as respondents, testimony was submitted by objectors to the referenda petitions, from which it appears that the two petitions involved in these proceedings were filed by William Sauer, one of the respondents, with the County Commissioners of Bucks County, on May 24, 1951, one under the provision of section 32 of the Beverage License Law of May 3, 1933, P. L. 252, as amended (47 PS §100*n*), and the other under section 502 of the Pennsylvania Liquor Control Act of November 29, 1933 (special sessions), P. L. 15, as amended, 47 PS §744-502. These petitions ask the county commissioners, as the county board of elections, to cause to be submitted to the qualified electors of Falls Township, Bucks County, at the primary election next ensuing, in the manner provided by the election laws of the Commonwealth, the questions specified in the acts of assembly referred to relating to the granting of malt and brewed beverage retail dispenser licenses and liquor licenses, respectively, in the township.

Mr. Harvey, the chief clerk of the county commissioners, upon receiving the respective petitions, inquired of Mr. Sauer whether the several sheets were filed as one petition upon the "beer" referendum, and as one petition under the "liquor" referendum, the several sheets pertaining to these respective issues being fastened together by large paper clips, one pertaining to the "beer" referendum and the other to the "liquor" referendum. Mr. Sauer assured Mr. Harvey that the separate sheets were to be considered as one petition under each issue, respectively, whereupon Mr.

Harvey informed Mr. Sauer that the sheets of each petition should be numbered, which he, Mr. Harvey, as clerk aforesaid, proceeded forthwith to do in the presence of Mr. Sauer.

Each of the respective petitions consisted of 13 physically separate documents, fastened together by a large clip as aforesaid. The "liquor" petition consisted of 13 separate double sheets of paper, physically fastened together as aforesaid. Each of the double sheets of paper bears the printed matter pertaining to the petition on the front or facing page, with lines for signatures on the other three pages of the double sheet, and with a printed form of affidavit on the lower half of the fourth page of the double sheet. Each of the sheets was numbered by Mr. Harvey, as aforesaid, 1 to 13, inclusive.

The "beer", or malt and brewed beverage petition, consisted of 13 sets of five pages each, bound together in a blue backer with lines for signatures on each of the five pages, the printed or mimeographed matter defining the nature of the petitions and question to be submitted set forth on the first page only. The affidavit on each of the 13 sets was contained on and constituted the fifth page of each set. The 13 sets were likewise accepted as one petition by the clerk of the county commissioners, aforesaid, and were numbered by him 14 to 26, inclusive.

At the hearings, which consumed several days, it was stipulated that the highest number of votes cast for any office in Falls Township in the last preceding general election was 637, and that 25 percent of this number, the requisite number of signers required by the act of assembly, would be 159. The exact number of parties signing each of the referendum petitions was not determined at the hearing, being left for the court to determine upon its final decision on the foregoing petitions to set aside the referenda. The court

has examined the petitions and, according to our count, we find that the total number of signers on the "liquor" petition aggregated 334, of which 23 signatures had been withdrawn prior to the filing, or a net number of 311 signers when filed. The "beer" or malt beverage petition had 339 signers, of which 22 had withdrawn prior to filing the petition, leaving the net number of signers 317 when filed.

The petitions to set aside these referenda involve several questions. The first of these is as to the jurisdiction of the court to hear and determine the questions raised by the objections as filed. It is contended by respondents that the court is without jurisdiction in these proceedings to consider the legal sufficiency of the petitions. We cannot subscribe to this. While the Pennsylvania Liquor Control and Malt Beverage Acts are silent as to the formalities to be pursued in submission of these referenda questions and contain no provision for contesting a local option election thereunder, our courts have ruled that all the formalities provided for nominations and election of candidates should be observed in the submission of questions under the local option provisions of the Liquor and Malt and Brewed Beverage Acts: In re Election in East Hanover Township, 36 D. & C. 246. In the Harrisburg Sunday Movie Petition case, 57 Dauph. 146, affirmed by the Supreme Court, 352 Pa. 635, the court, in construing the Act of July 2, 1935, P. L. 599, as amended, 4 PS §61 (which provides for submission in a municipality, "in the manner provided by the election laws of the Commonwealth" of "a question to determine the will of the electors . . . with respect to motion picture exhibitions"), held that this act by reference to the election laws makes sections 908 and 909 of the Election Code of 1937 applicable to petitions for referendum filed under the Act of 1935, and that in order to have the question submitted "in the manner pro-

vided by the election laws", the question must be placed on the ballot by petitions which comply with the requirements for petitions set forth in sections 908 and 909 of the Election Code. In its opinion the court specifically referred to similar local option provisions contained in the Malt Beverage Act of 1933, as amended (47 PS §100n) and in the Liquor Control Act of 1933, as amended (47 PS §744-502). See also Long v. Cochran et al., County Commissioners, 358 Pa. 129, 131; In re Petition for Referendum on Sunday Motion Pictures, 59 Dauph. 53. From the foregoing decisions, therefore, it necessarily follows that this court has jurisdiction in the matter before us.

The second question to be determined has to do with the sufficiency of the petitions as filed, it being the contention of petitioner, as set forth in his objections nos. 3 and 7, that the 13 petitions do not, taken together, constitute one petition, not having been bound together at the time of filing, as required by the act of assembly.

Section 909 of the Election Code of 1937, P. L. 1333 (25 PS §2869) provides that a petition may be on one or more sheets, and different sheets must be used for signers resident in different counties. If more than one sheet is used, they shall be bound together when offered for filing if they are intended to constitute one petition, and each sheet shall be numbered consecutively, beginning with number one at the foot of each page. Our appellate courts have held that while the words "bound together" within this section are not explicit as to what would constitute binding (Long v. Cochran et al., County Commissioners, supra), we are convinced that, under the evidence before us, the 13 separate sheets in the respective petitions were offered and accepted as one petition for each of the referenda. Therefore, these objections must be overruled.

Objection no. 4, that no one of the 13 petitions was signed by registered electors equal to at least 25 per-

cent of the highest vote cast for any office in Falls Township at the last preceding general election, must be conceded. However, in view of our conclusion that the 13 separate sheets or petitions constitute and were received as a single petition, this objection becomes unimportant, and must be dismissed.

Objection no. 5, that none of the petitions were filed with the county commissioners within the time required by law, must also be overruled. Under the provisions of the Liquor Control and Malt Beverage Acts, these petitions must be filed at least 60 days before the primary election date. Under section 604 of the Election Code, as amended by the Act of March 6, 1951 (Act No. 1), effective May 1, 1951, the primary election to be held in 1951 is on July 24th. It follows, therefore, that the petitions which were filed on May 24, 1951, were within the time required by the code. See Kram v. Kane et al., 336 Pa. 113.

Objection no. 6 complains that the signatures to the petitions were obtained by certain of the persons circulating the same, falsely representing to the signers thereof that the purpose of the referenda was merely to prevent the issuance of additional liquor or beer licenses in various parts of Falls Township, and not disclosing that its purpose is to prevent the issuance of any liquor or beer licenses, including the renewal of the existing licenses. This presents a factual question. At the hearing counsel for petitioner called 27 persons who had signed the referenda petitions. Substantially, all of these witnesses testified that, in signing these petitions, they were either misinformed or misunderstood their effect, if adopted. The gist of the alleged false representations, in most cases, was to the effect that the parties circulating the petitions informed those whom they asked to sign that it was for the purpose of preventing any "more" liquor licenses in Falls Township. Five of the signers testified that they were told

it was intended to keep the saloons out of the Village of Fallsington. Several testified that they were specifically told it would not affect the existing licenses. In most cases they did not read the petitions, giving as their explanation that the circulators were friends of theirs and they had full faith and trust in them and signed them upon request without making any inquiry as to what they contained or implied. At least 16 of the witnesses called to testify, asked that their names be withdrawn. The names of at least 22 others had been stricken out prior to the filing of the petitions. While this clearly indicates that many of the signers of the petitions were not fully informed as to the implications of these referenda, we do not believe that the circulators of the petitions intended to deceive or that they were guilty of any deliberate falsehoods in soliciting signatures to these petitions. We are more inclined to believe, as some of the circulators admitted at the hearings, that they themselves did not fully understand what the referenda implied, particularly with reference to existing licenses. Accordingly, we must refuse the request that these signers be allowed to withdraw their names at this late date.

Objection no. 8, that the sheets of each petition are not numbered consecutively, as required by the law, and objection no. 9, that each petition does not have appended thereto the affidavit required by law, must be dismissed, as this matter has been sufficiently covered in answer to objections nos. 3 and 7, and are dismissed.

Objection no. 10 complains that the signers of the petitions did not sign with full knowledge of the contents of the petitions, for the reasons set forth in objection no. 6. This must be conceded, and need not be elaborated upon, it having been fully covered in our answer to objection no. 6.

Objections nos. 11 to 14, inclusive, complain of the sufficiency of the affidavits to the respective petitions.

These will be considered together. Section 909 of the Election Code of June 3, 1937, supra, referring to nomination petitions, provides, in part, that each sheet of a nomination petition shall have appended thereto the affidavit of some person, not necessarily a signer, and not necessarily the same person on each sheet, setting forth: (a) That the affiant is a qualified elector of the State, or of the political district, as the case may be, referred to in the petition; (b) his residence, giving city, borough or township, with street and number, if any; (c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name, and (g) that to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State, or of the political district, as the case may be: 25 PS §2869.

An examination of the several sheets comprising the respective petitions reveals that each sheet has appended thereto an affidavit. The affidavits as to content contained on the "liquor" referendum petition are in full compliance with the requirements of the act of assembly, supra. In the "beer" petition, there is a variance in the affidavit from that required by the act of assembly, in that there is no averment by the affiant that he is a qualified elector of the political district or subdivision in which the petition was circulated. Neither is there anything contained in this affidavit to the effect that the signers to the petition live in the political subdivision in which the petitions were circulated.

These constitute material errors in the affidavit. However, since they are apparent on the face of the affidavit, they would be amendable so that they might

correspond with the facts and the requirements of the Election Code. Unfortunately, however, there are other material defects in connection with these affidavits to a large number of the sheets which comprise the respective petitions, which, although not raised by formal objections, because the information could not be ascertained prior to the hearing, are much more serious.

The undisputed testimony revealed that a number of the affiants did not circulate the petitions to which they made affidavits and had no knowledge of their execution or the circumstances under which they were signed. A number of the other affiants circulated the petitions to which they made affidavits among only a limited number of the signers, while the remaining signatures thereto were obtained by someone else, in their absence.

The law contemplates that the person making the affidavit should have full knowledge of what is contained therein and of the facts therein set forth. Our courts have declared that one who makes the affidavit to nomination papers must have personal knowledge of each of the first six subjects set forth in the Election Code of 1937, governing the circulation of nomination petitions and the affidavits thereto, by the circulator, as the necessary contents of an affidavit to nomination papers. He may, however, swear that to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered voters of the political district in which the petition is circulated. Also, that since an affidavit is the prerequisite of the filing of nomination papers, any defect in the affidavit is a material error, whether or not it is apparent upon the face thereof: Objections to Nomination Papers for Socialist Labor Party, 46 Dauph. 90.

With reference to the "liquor" referendum petitions under consideration, we find that seven of the affidavits thereto, to wit, sheets nos. PX 3, 4, 5, 6, 8, 11 and 12, were made by the persons who circulated the same.

They aggregate a total of 120 signers. The affidavits to the remaining six sheets, viz., PX 1, 2, 7, 9, 10 and 13, are defective, and constitute material errors, because in some of them (PX 1 and 2), affiants did not accompany the circulators and were not present when any of them were signed and, therefore, unfamiliar with the facts. In the remaining sheets, viz., PX 7, 9, 10 and 13, the affidavits are likewise defective and constitute material errors, because affiants secured only a comparatively few of the signatures contained therein. The remaining signatures were procured by someone other than affiants and not within their presence. These defective petitions constitute in the aggregate 191 signers.

In the "beer" or malt and brewed beverage petitions a similar situation exists. We find that in seven of the petitions which constitute the petition as filed, viz., PX 15, 16, 17, 18, 20, 22 and 24, the circulators of these petitions are affiants thereto, with an aggregate number of 120 signers. In the remaining six petitions, viz., PX 14, 19, 21, 23, 25 and 26, the affidavits are defective because the affiants were persons other than those who circulated the same, either in whole or in part. These defective petitions contain, in the aggregate, 197 signatures.

Although there was no formal application made at the hearings, counsel for petitioners for the referenda suggested, at the argument, that these defects were amendable: Section 976 of the Election Code of 1937, supra, 25 PS §2936, provides, in part, that no nomination petition, nomination paper or nomination certificate shall be permitted to be filed if: (a) It contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits, or (b) it contains material alterations made after signing without the consent of the signers, or (c) it does not contain a sufficient number of genuine

signatures as required by law. Section 977 of the code (25 PS §2937) governing the objections to nomination petitions and papers, provides, inter alia, that if the court shall find that the nomination petition or paper is defective under the provisions of section 976, supra, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of the act, or was not filed by persons entitled to file the same, it shall be set aside. It contains this further provision:

"If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, or on the face of the accompanying or appended affidavits, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify."

We have already referred to the errors apparent on the face in the affidavits accompanying the petition for the "beer" referendum and indicated that they might be amendable. The more serious defects, however, to which we have just referred, namely, the defective affidavits, by reason of their having been made by persons other than the circulators and who were not familiar with the facts to which they have sworn, are not apparent on the face of the affidavits and, therefore, not within this provision of the election code. These affidavits are obviously false and not based on personal knowledge, which is a requisite of all that is contained in the affidavit, with the exception as to whether the signer was a qualified elector, which averment may be based on information and belief. Although unquestionably irregular and not in compliance with the act, it is only by proof outside of the affidavits that their incorrectness was ascertained and their truth challenged. Furthermore, the fact that nearly all of the

27 persons who were signers of the petition who testified at the hearings to the effect that they signed these petitions under false representation or other misinformation as to the effect of these referenda, if adopted, affords a reasonable conclusion that a large number of the remaining signers were likewise ignorant of the contents of the petitions and, therefore, the affidavits made by the affiants that the signers signed the petitions with the full knowledge of their contents, is not true. It was further established at the hearings that at least four of the signers were not registered or qualified electors of Falls Township, the political district in which these petitions were circulated.

In Harrisburg Sunday Movie Petition case, supra, at page 638, it is stated:

" 'The provisions of the election laws relating to the form of nomination petitions, and requiring the person circulating them to swear to certain definite things, are necessary to prevent fraud . . . It is just as important for the petitions . . . to have the names properly signed, with addresses, occupation and date of signature, and to be supported by affidavit as any petition filed in accordance with the Election Code.' "

Again, in Commonwealth v. Antico et al., 146 Pa. Superior Ct. 293, on page 307, the court says:

"The Act of Assembly and the form of the nomination paper and affidavit to it, prepared under the act, clearly intend that the affiant shall be a person who either circulated the paper himself or was present at its circulation and could personally make oath as to the genuineness of the signatures of the signers and the correctness of their residence and date of signing, and that the persons who signed their names to it did so with full knowledge of its contents."

We know of no law or provision of the Election Code giving the court any authority to allow a substitution or an amendment of the existing affidavit to a nomina-

tion petition, particularly where the affidavit is obviously false or fraudulent and the defect is not apparent on its face, after the petition has been filed: Embon Petition, 34 Del. Co. 121; In re Communist Party Nomination Papers, 33 Luz. 265.

Although some of our courts have stated, in effect, that the Election Code should be liberally construed in the case of technical errors or defects, so as to maintain the ultimate object of all election laws, that is, a free election in which any qualified person may submit his or her candidacy to the people, or to permit citizens freely to express their convictions on referenda to be submitted to them, it has been the policy of this court to require that the provisions of the Election Code be strictly complied with.

We, therefore, conclude and hold that both of the petitions for a "liquor" referendum and a "beer" or malt and brewed beverage license referendum, respectively, are fatally defective and that sheets nos. PX 1, 2, 7, 9, 10 and 13 of the "liquor" referendum petition and PX 14, 19, 21, 23, 25 and 26 of the "beer" or malt and brewed beverage petition for referendum, must be excluded, thereby reducing the number of valid signers to the "liquor" petition to 120, and the number of valid signers to the "beer" or malt and brewed beverage petition likewise to 120, which is an insufficient number and below the minimum number of 159 required signatures to permit the referenda to be submitted to the voters.

Now, to wit, June 12, 1951, for the reasons herein stated, the petitions to the county commissioners for referenda on the question of granting liquor licenses and malt and brewed beverage retail dispenser licenses for consumption on the premises in Falls Township, Bucks County, Pa., at the primary election to be held on Tuesday, July 24, 1951, are hereby set aside and the county commissioners are hereby directed not to

permit the questions upon the ballot for submission to the voters.

The prothonotary is directed to certify a copy of this order to the clerk of the county commissioners.